NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| COMPUTER SYSTEMS SERVICE & CONSULTING, INC. d/b/a CSSC, INCORPORATED, | : : : : | **Hon. Dennis M. Cavanaugh** |
| Plaintiffs, | : : | **OPINION** |
| v. | : : | Civil Action No. 09-0080 (DMC)(JAD) |
| HIGH POINT SOLUTIONS, LLC, ROBERT C. LORENCE, JR., ANTHONY GOTZIS and E. BRUCE SOHMER, | : : : | |
| Defendants. | | |

DENNIS M. CAVANAUGH, U.S.D.J.:

      This matter comes before the Court upon Plaintiffs' Computer Systems Service & Consulting, Inc. ("Plaintiffs") Motion for Summary Judgment pursuant to Fed. R. Civ. P.56(c). Pursuant to Fed. R. Civ. P. 78, no oral argument was heard.  After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Plaintiffs' motion for Summary Judgment is **denied**.

## I.    BACKGROUND[1]

      Plaintiff Computer Systems Service & Consulting, Inc. ("CSSC")[2] is a New Jersey

_____

      [1] The facts set-forth in this Opinion are taken from the Parties' statements in their respective moving papers.

      [2]As the result of a merger, Plaintiff is now known as Q Pharma, Inc.  CSSC is now one of three divisions of Q Pharma.

corporation in the business of providing consulting, validation and implementation services for pharmaceutical and life science companies.[3]  Defendant HighPoint Solutions, LLC ("HighPoint") is a Pennsylvania corporation which describes its services as providing specialized IT services for pharmaceutical, healthcare, and financial services companies, and has recently expanded its business operations in the pharmaceutical and life science industries.  Defendants Robert Lorence ("Lorence") and Anthony Gotzis ("Gotzis") were employed with CSSC until in or around May 2008, at which time they tendered their respective resignations.  In or around May 2008, Defendants Lorence and Gotzis were offered and accepted employment with HighPoint Solutions.

In or about October 2005, CSSC was approached by Sparta Systems ("Sparta") with a proposal to partner with CSSC to train and certify CSSC employees to implement TrackWise, a unique software program used by pharmaceutical companies to manage and track all events, issues and corrective actions arising throughout a product's development and manufacturing process. CSSC and Sparta entered into a contract on or about November 11, 2005.  Pursuant to the agreement, CSSC incurred the cost for its computer consultants to undergo four to five weeks of TrackWise training.  Upon certification, CSSC consultants would be sent out to various companies to implement the TrackWise software and troubleshoot problems as they arose.  Plaintiffs allege that "CSSC's specially-trained consultants comprised the heart and soul of CSSC's business."

---

[3]In order to ensure the integrity of the electronic records of pharmaceutical companies, FDA regulations require that such companies demonstrate to the FDA that their computer and software systems provide consistent and valid results, and comply with certain regulations.  The process of compiling and providing this information is known as computer system validation ("CSV").  CSSC is in the business of assisting in the CSV process, and has alleged that such services constitute the primary thrust of its business.

2

Defendants Gotzis and Lorence began their employment at CSSC in April and June of 2003, respectively.  At the time of employment, both Defendants executed a Confidentiality Agreement pursuant to which they agreed, among other things to maintain as confidential "information regarding the purchase, sale and development of projects" undertaken by CSSC, and to refrain from "furthering current or future outside employment or activities or for obtaining personal gain or profit."  Defendants also signed acknowledgment forms that they received the Employee Handbook, in which confidential information was identified to include "compensation data, customer lists, financial information, pending projects and proposals, proprietary production processes, research and development strategies, technological data and prototypes and CSSC developed documents and deliverables."

During their tenure at CSSC, Gotzis and Lorence were was promoted: Gotzis to Vice President of Sales and Lorence to Managing Director of Operations.  As part of his responsibilities, Lorence came to manage CSSC's Sparta Systems account and staffed CSSC consultants on TrackWise projects. Lorence functioned as the primary contact with Sparta Systems professional services department.  During Lorence's employment, he was in contact with Michael Broderson, Sparta Systems' Vice President of Services at the time ("Broderson").

At some point prior to March 2008, Lorence and Gotzis decided to leave their employ at CSSC and pursue employment elsewhere.  Between the time of this decision and their ultimate resignation in May 2008, Lorence and Gotzis informed various CSSC clients and employees, as well as Broderson of Sparta,  of their intention to leave.  Lorence and Gotzis subsequently tendered their respective resignations to CSSC, and in or around May 2008, both commenced employment with

3

HighPoint Solutions.

On January 8, 2009, Plaintiff brought this suit alleging claims of breach of duty of loyalty, breach of confidentiality agreement, misappropriation of confidential information, and tortious interference with prospective economic gain arising out of Defendant's alleged conduct.

Plaintiff maintains that Defendants Lorence, Gotzis, and HighPoint concerted an "unlawful scheme to usurp and plunder a substantial portion of CSSC's business, clients, and employees" by engaging in an "intentional and systematic pattern of conduct through which they wrongfully interfered with and ultimately pirated away from CSSC virtually an entire department of employees and an entire segment of business with a long-standing client." Plaintiff also maintains that pursuant to this scheme, the Individual Defendants misappropriated CSSC's confidential business information, including specific business proposals to clients.

Defendants Lorence and Gotzis deny Plaintiff's allegations, and maintain that they did not disclose any of CSSC's confidential information to HighPoint or other prospective employers, and did not solicit any of CSSC's clients or employees.

Defendant HighPoint disputes that it did not wrongfully or intentionally interfere with any of CSSC's actual contracts or prospective economic gains, that it cannot be held liable for misappropriation or conversion of CSSC's property, and that because HighPoint did not misappropriate any of CSSC's property, act with bad faith, or commit any fraud, it therefore cannot be found liable for unfair competition, unjust enrichment, or punitive damages.

Plaintiffs moved for summary judgment as to liability against Defendants HighPoint, Lorence, and Gotzis. Plaintiffs allege that summary judgment is appropriate because the material

facts concern the Defendants' conduct and were derived primarily from words and documents of Defendants themselves, which they cannot now dispute. Because this Court finds that there are material facts that remain in dispute and are critical to each of the claims raised on summary judgment, Plaintiff's motion for summary judgment is hereby **denied.**

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). "A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion." See Celotex Corp., 477 U.S. at 323. "This burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party." Id. at 330.

"In determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin. Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000), aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)).

While a court must draw reasonable inferences, the non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor. See FED. R. CIV. P. 56(e); see also Matsushita Elec.

Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "[U]nsupported allegations in memorandum and pleadings are insufficient to repel summary judgment."  Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990).  In addition, conclusory allegations are insufficient to establish genuine issues of fact.  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 902 (1990).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co., 475 U.S. at 586.

## III.   DISCUSSION

Several key facts crucial to Plaintiff's claims on summary judgment remain in dispute at this stage in the litigation.  Specifically, Plaintiff has raised claims of (1) Breach of Employee's Duty of Loyalty against Gotzis and Lorence, (2) Breach of Confidentiality Agreement against Gotzis and Lorence, (3) Misappropriation of Confidential Information against HighPoint, Gotzis, and Lorence, and (4) Tortious Interference with Prospective Economic Gain against HighPoint, Gotzis, and Lorence.  Each of Plaintiff's claims raised on summary judgment rely on the establishment of at least one of three key facts: whether or not Gotzis and Lorence disclosed to HighPoint confidential information acquired by them during the course of their employment with CSSC, whether Gotzis and Lorence solicited existing CSSC customers prior to their departure, and whether Gotzis and Lorence solicited CSSC employees to induce them to leave their employ with CSSC and work for Defendant HighPoint.  As this court finds that these material facts remain in dispute at this stage in the litigation, Plaintiffs' motion for summary judgment is **denied**.

**A.     BREACH OF EMPLOYEE'S DUTY OF LOYALTY AGAINST GOTZIS AND LORENCE**

Plaintiff claims it is entitled to summary judgment on their claim that Lorence and Gotzis breached their duty of loyalty that they owed CSSC.  Under New Jersey law, an employee's duty of loyalty while employed consists of the duty to not act contrary to the employer's interests, and to not compete with the employer. Lamorte Burns & Co. v. Walters, 167 N.J. 285, 302 (2001). "Employees should not engage in conduct that causes their employers to lose customers, sales, or potential sales.  Nor should they take advantage of their employers by engaging in secret self-serving activities, such as...usurping the employer's corporate opportunities." Cameco, Inc. v. Gedicke, 157 N.J. 504, 522 (1999); Chernow v. Reyes, 239 N.J. Super. 201, 204 (N.J.Super.Ct.App.Div. 1990); United Board & Carton Corp. v. Britting, 63 N.J.Super. 517, 524 (N.J.Super.Ct.App.Div. ; Auxton Computer Enter., Inc. v. Parker, 174 N.J. Super. 418, 423-24 (N.J.Super.Ct.Ch.Div. 1980).   "An employer may prove a prima facie case of an employee's breach of the duty of loyalty not only by showing that the employee directly competed with the employer while employed, but also by showing that the employee while employed assisted the employer's competitor." Id. at 303. While an employee is not prohibited from making preparations for future employment with a competitor without breaching their duty of loyalty, such preparations may not include the solicitation of the employer's customers or the pursuit of other acts of secret competition. Lamorte, 167 N.J. at 303.; see also United Board & Carton Corp., 63 N.J. Super. at 524.

At issue here is whether Defendants Lorence and Gotzis engaged in activities prior to their departure from CSSC that constituted a breach of their duty of loyalty to CSSC.  In support

of their claim of breach of loyalty, Plaintiffs allege that the record evidence demonstrates that Gotzis and Lorence "purloined protected information from CSSC" which they and HighPoint then used "virtually in their entirety, for their own financial benefit, and in direct competition with CSSC and to its detriment, in securing validation services projects they were being paid to secure for CSSC." Further, Plaintiff alleges that Gotzis and Lorence "secretly compiled and pedaled CSSC's clients, client contact information, validation practice revenues, employee list, profit margins, salary information and other sensitive CSSC financial data...to prospective employers." Such actions are alleged to have been taken in direct contravention of Defendant's obligation to not disclose CSSC's confidential information, which was set forth in their respective Confidentiality Agreements as well as controlling common law. Finally, Plaintiffs allege that Lorence and Gotzis admitted to solicitations of CSSC's clients for the purpose of furthering their own competition for their own gain. According to Plaintiff, Gotzis and Lorence not only made preparations to leave CSSC for HighPoint, but approached CSSC's customers with the express purpose of diverting them from CSSC and luring them to their new employer.

Defendants dispute each of the assertions advanced by Plaintiff in support of their claim for breach of duty of loyalty. First, Defendants specifically deny Plaintiff's claims that they purloined protected information from CSSC and used such information with HighPoint in securing validation services. Defendants deny ever providing HighPoint with any of CSSC's work proposals, and rather maintain that they used the information they gained in the industry in creating a business model for HighPoint. Defendants also challenge Plaintiff's suggestion that Defendants provided HighPoint with CSSC's Allergen proposal. As basis for this conclusion,

8

Plaintiffs allege that because Allergen's Director of IS Compliance Victor Huynh specifically denies providing HighPoint with the Allergan proposal, that Lorence necessarily must have. However,  Defendant Lorence challenges the basis for this assertion and specifically denies providing HighPoint with the proposal, thereby leaving this fact in dispute.

Second, Defendants dispute pedaling CSSC's client and other information to prospective employers.  Plaintiff maintains that Defendants compiled confidential information from CSSC, which they then presented to prospective employers, specifically Alliance and HighPoint. Plaintiffs point to the fact that Alliance conceded having possession of a spreadsheet that Gotzis and Lorence provided coincident to negotiations for potential employment.  Plaintiff asserts that Gotzis and Lorence provided similar information to HighPoint, despite HighPoint's persistent denial of receipt of such information.  Defendants counter this allegation by asserting that the information provided to Alliance did not identify clients, but were mere projections of revenue that the Individual Defendants believed they could achieve.  Finally, Defendants note that Plaintiff has not offered any proof that Lorence provided to HighPoint or Sparta any of CSSC's proposals and Lorence denies having done so.

Third, Defendants specifically deny that they solicited any of CSSC's clients for the purpose of furthering their own gain.  CSSC maintains that Lorence and Gotzis diverted projects for at least six CSSC clients for whom they were the primary contact and with whom CSSC had validation services proposals pending.  Plaintiff points to the meetings held by Lorence and Gotzis with CSSC validation services clients between January and April, 2008.  Plaintiff maintains that in the course of these meetings, Defendants solicited those clients and informed

them that they would be establishing a competing validation and compliance service business elsewhere.  Specifically, Plaintiff notes the March 20, 2008 meeting with Allergen's Huynh, at which time Lorence informed Huynh that he would soon be leaving CSSC's employ.

Defendants counter Plaintiff's factual allegations by maintaining that they merely informed current or prospective clients of CSSC with whom they had established relationships that they would not be able to personally guarantee CSSC's projects, as they would no longer be employed with CSSC at the time of their completion.  Defendants challenge Plaintiff's assertions as nothing more than inferences that the Individual Defendants provided Plaintiff's proposals for Allergan, SAIC-Frederick, Cubist, and J&J to HighPoint or Sparta.   Defendant HighPoint further proffers an alternative explanation for the departure of CSSC's former clients, suggesting that CSSC's loss of clients was not due to any improper behavior on the part of the Defendants, but was rather a result of CSSC's loss of its consultants with whom the clients wished to work.  Notably, the record evidence reveals that certain of CSSC's clientele had a strong preference for the consultants with whom they worked, and indicated a desire to take their work to whichever company these consultants were employed.[4]

Finally, Defendants deny soliciting CSSC's employees to work with HighPoint.  Plaintiffs maintain that Lorence and Gotzis admitted that during their employment with CSSC, they informed at least ten CSSC employees that they would soon be leaving CSSC to start a

---

[4]In his deposition testimony, Victor Huyhn indicated a strong preference for working with Devora Perich, one of the former CSSC employees who came to be employed with Defendant HighPoint. Defendants allege that Perich was unhappy at Plaintiff and in March 2008 had decided to seek employment elsewhere, and would therefore be unavailable to Plaintiff to complete the work requested at the time the project was to be performed.

competing compliance practice at a destination company and solicited those employees to leave

their jobs at CSSC and join them in their new venture.  The Individual Defendants dispute that

they *solicited* said employees, but rather simply informed them of their departure.  Lorence does

not dispute that he provided HighPoint with a list of CSSC consultants who were unhappy with

their employment at CSSC, but denies playing any further role in endeavoring to have those

individuals work at HighPoint. In addition, Defendant HighPoint provides an alternative

explanation for the departure of CSSC's employees, noting that the employees were unhappy

with their situation and compensation at CSSC and had made the decision to leave CSSC prior to

any contact with HighPoint.  The Defendants therefore dispute that the departure of CSSC's

employees was the direct result of any improper conduct by Defendants that could be construed

as a breach of their duty of loyalty.

There are therefore several issues of material fact regarding the factual basis for

Plaintiff's claim of breach of loyalty.  Summary judgment is therefore not appropriate.

### B.    Breach of Confidentiality Agreement Against Gotzis and Lorence

Plaintiffs provide that the Confidentiality Agreement signed by Defendants Gotzis and

Lorence provided that each agreed to maintain as confidential "information regarding the

purchase, sale and development of projects" undertaken by CSSC, including "acquisition and

sales information, future projects and or information regarding CSSC Inc's operations,

procedures or practices."  The Individual Defendants further agreed to refrain from "furthering

current or future outside employment or activities or for obtaining personal gain or profit."

Again, Plaintiff asserts that the record evidence establishes that Lorence and Gotzis

11

wrongfully disclosed and used CSSC's confidential information for their own personal gain or profit and points to the same factual basis provided in support of their claim of breach of the duty of loyalty.  As it has already been established that this factual basis remains in dispute, Plaintiff's motion for summary judgment on the claim of breach of the Confidentiality Agreement must also fail.

### C.    Misappropriation of Confidential Information Against HighPoint, Gotzis, and Lorence

In support of its assertion of Misappropriation of Confidential Information, Plaintiff asserts that it is a matter of record that HighPoint made full use of CSSC's confidential information disclosed to it by Gotzis and Lorence.  Plaintiff asserts that HighPoint admittedly had no validation services practice at the time of the Gotzis and Lorence hires, but immediately upon Lorence's employment commenced validation services work on at least two detailed proposals for validation services work, which included the same overviews, scope of work, project deliverables, revenue and cost projections, rates and profit margins as CSSC's proposals for the same customers.

Again, Plaintiffs rely on the same factual basis that Defendants disclosed CSSC's confidential information to support their claim of misappropriation of confidential information, claiming "Gotzis and Lorence could not use or disclose CSSC's Confidential Information without committing the tort of misappropriation."  As the factual basis regarding the disclosure of CSSC's confidential information remains in dispute, Plaintiff cannot succeed on its motion for summary judgment on the claim of misappropriation of confidential information.

12

**D.** **Toritous Interference with Prospective Economic Gain Against HighPoint,**
**Gotzis, and Lorence**

Under New Jersey law, a claim of tortious interference with prospective economic gain requires a showing of: (1) a reasonable expectation of economic advantage or existing contractual relation; (2) interference with that right, or a contract, intentionally and with malice; (3) loss of prospective gain as a result of that interference; and (4) resulting damages. Printing Mart-Morristown v. Sharp Elec. Corp., 116 N.J. 739, 751 (1989); Macdougall v. Weichert, 144 N.J. 380, 403-404 (1996).

Plaintiffs base their claim of tortious interference on the same premise as their claim for breach of loyalty, noting "where courts have found defendants to have breached their duty of loyalty, the same conduct also constitutes tortious interference." citing Lamorte, 167 N.J. at 309. Specifically, Plaintiffs allege that CSSC had a reasonable expectation of economic advantage, based on its long-standing validation services practice, and previous orders from its existing client base. Plaintiff had submitted work proposals to several clients, and maintains that they had a reasonable expectation that such proposals would lead to economic gain. Such expectations were allegedly frustrated when Defendant's conduct provided such prospective clients with the impetus to move. Plaintiff also asserts that Lorence enlisted Sparta Systems' assistance in taking on all communications with CSSC clients to CSSC's exclusion and convinced Sparta Systems to put further contracts in place with those CSSC clients for the purpose of moving validation services projects away from CSSC and to HighPoint. Plaintiffs further allege that malice on the part of Defendants has been established through the purported "stealth solicitation of CSSC's

13

customers and its raiding of CSSC's validation services staff", concluding that such activity was "beyond the acceptable parameters of the 'rules of the game.'"

As previously discussed, Defendants specifically dispute that they *solicited* any of CSSC's clients or employees, and rather provide alternative explanations for CSSC's losses of same. Defendants note that at the time Lorence and Gotzis informed such prospective clients that they were leaving CSSC, CSSC was competing for the proposed work with other Sparta partners and none of said clients had yet made a decision as to which provider to use. HighPoint points out that at the relevant time period the customers at issue were already under contract for Track Wise-related services with Sparta and each merely decided to add the additional services that they needed to their existing contracts with Sparta, and let Sparta decide who to subcontract for the work. Defendants therefore challenge Plaintiff's conclusion that CSSC lost prospective business as a result of Defendant's purported wrongful conduct.

Also challenged by Defendants is the basis for which Sparta ceased referring validation services to HighPoint. While Plaintiff alleges that the decline in Sparta's referrals of validation services projects to CSSC was the result of improper collusion between Sparta's Broderson and Lorence and Gotzis, Defendants counter that the decline in the relationship between Sparta and CSSC was the result of CSSC's own actions. Defendants maintain that CSSC destroyed its own relationship with Sparta when it issued an email blast advertisement that was understood by Sparta to be an attempt by QPharma/CSSC to compete with Sparta. Defendants maintain that Sparta had continued to refer CSSC up until the issuance of this advertisement, but then terminated its partnership with CSSC/QPharma by letter dated January 27, 2010. Therefore, Defendants deny that

any wrongful conduct on their part disrupted CSSC's contractual relationship with Sparta.

Defendant HighPoint further maintains that it was unaware of the pending CSSC proposals to prospective clients and had not even begun negotiating the employment of Lorence and Gotzis at the time the customers decided to not accept CSSC's proposals.[5]  Defendants therefore maintain that they cannot be held liable for interfering with a contract for which they were unaware.

Defendants have therefore carried their burden in demonstrating that there remain issues of material fact with respect to Plaintiff's claim of tortious interference with prospective economic gain. Summary judgment on this claim is therefore inappropriate.

## IV.   CONCLUSION

Defendants have therefore met their burden of providing sufficient facts to establish the existence of several elements essential to his case.  For the reasons stated, it is the finding of this Court that Plaintiff's motion for Summary Judgment is **denied**.  An appropriate Order accompanies this Opinion.

   S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:        October  31 , 2011
Orig.:        Clerk
cc:        Hon. Joseph A. Dickson, U.S.M.J.
               All Counsel of Record
               File

---

[5]HighPoint notes that the customers made these decisions between March 17 and March 24, at which time HighPoint had not even begun employment negotiations.